UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

| | | | |
|---|---|---|---|
| CASE NO.: | CV 13-01607 SJO (SPx) | DATE: | September 24, 2013 |
| TITLE: | Black Rapid, Inc v. Millionway International, Inc et al. | | |

========================================================================
PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                                    Not Present
Courtroom Clerk                                     Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**        **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                         Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR CONTEMPT AND SANCTIONS** [Docket No. 35]

This matter is before the Court on Plaintiff Black Rapid, Inc.'s ("Plaintiff") Motion for Contempt ("Motion"), filed on August 17, 2013. Defendant Millionway International, Inc. ("Millionway") filed an Opposition on September 3, 2013; Plaintiff replied on September 5, 2013. The Court found this matter suitable for disposition without oral argument. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS** Plaintiff's Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Millionway and Plaintiff are competitors in the camera strap market. On December 9, 2010, Plaintiff filed an application with the United States Patent and Trademark Office ("Patent Office") to obtain a utility patent on a camera transport system and method ("the '729 Patent"). (Order Granting P.'s Mot. for Default J. ("Default Judgment Order") 1, ECF No. 29.) The Patent Office granted the '729 Patent on November 1, 2011, and issued a reexamination certificate confirming the validity of the '729 Patent on March 5, 2013. (Default J. Order 1.) Plaintiff is the exclusive owner of the '729 Patent and sells camera straps that incorporate the '729 Patent. (Default J. Order 1.)

On March 6, 2013, Plaintiff filed suit against Millionway in this Court for infringement of the '729 Patent.[1] (Default J. Order 2.) Plaintiff alleged that Millionway was not a licensee of the '729 Patent and had infringed at least one claim of the '729 Patent by manufacturing, importing, selling,

---

[1] Before Plaintiff's suit in this Court, Plaintiff filed suit in the Western District of Washington against Millionway and Defendant Tim Hsu ("Hsu") for infringing the '729 Patent. (Mot. 4.) Plaintiff also included Dot Line Corp. ("Dot Line") as a Defendant in the present case; Dot Line stipulated to entry of an injunction against it and is no longer a party to the action. (Mot. 4.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 13-01607 SJO (SPx)</u>  DATE: <u>September 24, 2013</u>

and offering to sell camera straps under the name "Carry Speed," including but not limited to its "Camera Sling" line of products (collectively, "Infringing Products"). (Default J. Order 2.)

Default was entered against Millionway on April 8, 2013, (Default by Clerk Entered ("Clerk's Entry of Default"), ECF No. 19), after Millionway failed to appear or file a response to Plaintiff's Complaint (Default J. Order 2). As a result, the Court deemed Millionway to have accepted as true Plaintiff's factual allegations that did not concern damages in the Complaint. (Default J. Order 4.) This included the allegation that Millionway's camera straps, including the "Carry Speed" line of products, infringed the '729 Patent. (Default J. Order 1-2.) On June 10, 2013, the Court ruled on Plaintiff's Motion for Default Judgment and granted a permanent injunction enjoining Millionway from infringing Plaintiff's '729 Patent ("Injunction"). (Default J. Order 9.) In granting this Injunction, the Court based its reasoning in part on a claim chart submitted by Plaintiff that compared claim 15 of the '729 Patent to Millionway's Carry Speed FS and CS Series Straps ("Claim Chart"). (Default J. Order 5; Decl. of George C. Rondeau in Supp. of Mot. for Default J. ("Rondeau Decl.") Ex. B, ECF No. 25-1.)

On June 12, 2013, Plaintiff provided notice of the Injunction to Millionway; XP Innovations, Inc. ("XP Photo"), a U.S. distributor of Millionway's Infringing Products; and Shopify Inc. ("Shopify"), the company providing Millionway's online sales software. (Mot. 6; Decl. of Benjamin J. Byer in Supp. of Mot. for Contempt ("Byer Decl.") Exs. 4, 5 & 7, ECF No. 35-2.) To comply with the Injunction, Shopify disabled websites that sold Millionway's Infringing Products. (Byer Decl. Ex. 8.) Since then, Plaintiff has documented numerous attempts by Millionway to evade this Court's Injunction.[2] First, to circumvent Shopify's actions, Millionway made copies of the disabled sales websites and reposted them using Shopify software so that the Infringing Products could again be purchased online. (Byer Decl. Ex. 8 at 1-2 & Ex. 9, ECF No. 35-3.) For example, Millionway changed the title for the infringing FS Pro Camera Sling strap sales webpage from "fs-pro-camera-sling-strap-with-f-1-foldable-mounting-plate" to "copy-of-fs-pro-camera-sling-strap" and offered it for sale again using Shopify's software. (Byer Decl. Ex. 8 at 1-2 & Ex. 9.)

Millionway's Infringing Products also appeared for sale on Amazon.com after the Court issued the Injunction. On June 21, 2013, Plaintiff sent Amazon.com notice of the Injunction with a request that Amazon.com remove Millionway's Infringing Products from its website. (Byer Decl. Ex. 10.) Amazon agreed to remove these product. (Byer Decl. Ex. 11.) An "Authorized USA Reseller" also offered Millionway's Infringing FS and CS Series Straps and Components for sale on eBay. (Byer Decl. Exs. 12 & 13.) As with Amazon.com, Plaintiff sent eBay notice of the Injunction and

---

[2] In addition to the listed acts, Plaintiff alleges that Millionway ran a Father's Day sale on Infringing Products "[i]n response" to Plaintiff's notice of the Injunction. (Mot. 6.) However, Plaintiff's evidence for this sale is an advertisement posted on Carry Speed's Facebook page on June 10, 2013, two days **before** Plaintiff provided Millionway notice of the Injunction. (Byer Decl. Ex. 6.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** CV 13-01607 SJO (SPx) | **DATE:** September 24, 2013 |

requested that eBay stop offering these infringing products for sale. (Byer Decl. Ex. 12.) In response, Millionway's registered agent filed a counter notice with eBay certifying that five of these products, including FS and CS Series Straps, did not infringe Plaintiff's intellectual property. (Decl. of Candice Whipple in Supp. of Mot. for Contempt ("Whipple Decl.") Ex. 2, ECF No. 35-10.)

At some point after the issuance of the Injunction prohibiting Millionway from selling any Infringing Products, Millionway launched a new website that remains available and accessible today. (Byer Decl. Exs. 16-21.) This website advertises a number of infringing products, including the FS-PRO, FS-SLIM, and FS-2 Carry Speed Straps. (Byer Decl. at Exs. 16-21.) The website also instructs visitors "where to buy" Carry Speed Strap products and links to XP Photo's website. (Byer Decl. Ex. 22.) Visitors who continue on to XP Photo's website can purchase a number of Infringing Products. (Byer Decl. Exs. 23-32.)

In addition to continuing to offer Infringing Products for sale, Millionway and XP Photo also filed federal lawsuits in the Southern District of Texas alleging that Plaintiff's enforcement of this Court's Injunction constitutes unfair competition and tortious interference, among other allegations. (Byer Decl. Exs. 35, 44.) In support of this argument, the parties claim that "Black Rapid did not ask the District Court in CDCA to determine that the '729 Patent had any valid claims, or that any claim was being infringed" and that this Court's Injunction "would not impact on Millionway [sic]" because "Millionway in the past and in the present has never infringed any of the claims of the '729 Patent." (Byer Decl. Ex. 35 ¶¶ 16, 18; Ex. 44 ¶¶ 15, 17.)

In response to Millionway and XP Photo's continued infringement of the Injunction, Plaintiff filed the Motion on August 17, 2013. Plaintiff seeks to enforce the Injunction against Millionway, XP Photo, and Hsu (collectively "Contempt Respondents"). Plaintiff claims that Millionway and XP Photo are in "active concert" to violation the Court's Injunction. (Mot. 18-19.) Additionally, Plaintiff claims Hsu directed and controlled Millionway's violation of the Injunction. (Mot. 18.)

There is conflicting evidence as to Hsu's exact role in Millionway's operation. Millionway's counsel and Hsu himself have both stated that Hsu is neither a stockholder nor an officer at Millionway. (Byer Decl. Ex. 2 at 1; Ex. 33 at 1.) Plaintiff also states that during the meet and confer before filing this Motion, Millionway's counsel claimed that Hsu "was no longer an employee of Millionway." (Byer Decl. ¶ 52.) However, there is also significant evidence that Hsu does work at Millionway in some capacity. Millionway's lawsuit in the Southern District of Texas asserts that Hsu is a "key employee of Millionway," (Byer Decl. Ex. 35 ¶ 21), and Hsu also contacted an employee at Black Rapid purporting to be Millionway's president to discuss a possible settlement in this case. (Whipple Decl. ¶ 2; Ex. 1.) Hsu also represents Millionway at trade shows, most recently on June 1, 2013. (Whipple Decl. ¶ 6.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   <u>CV 13-01607 SJO (SPx)</u>          DATE:   <u>September 24, 2013</u>

Plaintiff served notice of this Motion on David Fink ("Fink"), who claimed to be authorized to represent Millionway, XP Photo, and Hsu.³  (Decl. of Benjamin J. Byer in Supp. of P.'s Limited Non-Opp'n to Millionway's Mot. to Accept Late Filing ("Non-Opp'n and Reply") ("Second Byer Decl.") Exs. A, B & C, ECF No. 40.)  On September 3, 2013, Millionway filed a late Opposition to Plaintiff's Motion for Contempt, (Opp'n, ECF No. 38), in conjunction with a motion to accept its late Opposition mistakenly titled Motion for Arrest of Vessel (Mot. for Arrest of Vessel, First Mot. for Enlargement of Time to File, ECF No. 37).  Plaintiff did not oppose Millionway's motion and instead replied to the arguments in Millionway's Opposition.  (*See generally* Non-Opp'n & Reply.)

Plaintiff asks this Court to order Contempt Respondents to come personally to California to deliver all infringing Carry Speed camera sling straps and infringing accessories along with purchase orders, sales invoices, accounting records, and shipping receipts for the past twelve months. (Mot. 20.)  Plaintiff also seeks a sanction of $500 per day from each Contempt Respondent for the period spanning from the date these Contempt Respondents had notice of the Injunction until they demonstrate compliance with the Injunction. (Mot. 20.)  Plaintiff also seeks reasonable attorneys' fees and costs associated with enforcing the Injunction.  Finally, Plaintiff seeks an order from the Court authorizing the seizure, impoundment, and delivery of all unauthorized or infringing products that Contempt Respondents may import into the United States.  (Mot. 21.)

II.     DISCUSSION

In their Motion, Plaintiff asks the Court to find Contempt Respondents in contempt because they continue to offer Carry Speed Camera Sling Straps for sale in violation of this Court's Injunction.

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."  *Shillitani v. United States*, 384 U.S. 364, 370 (1966) (citing *United States v. United Mine Workers*, 330 U.S. 258, 330-32 (1947)).  "Congress has determined that the power to hold a party in contempt is a discretionary power vested in the court whose order has been violated."  *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1364 (9th Cir. 1987); *see also* 18 U.S.C. § 401.

Civil contempt sanctions serve two purposes: "to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986). Under Ninth Circuit law, the movant has the burden of showing "(1) that . . . [Contempt Respondents] violated

---

³ Millionway alleges that Plaintiff did not serve Hsu and XP Photo with the Motion for Contempt. (Opp'n 3.)  Because Fink represented himself as Hsu and XP Photo's attorney (Second Byer Decl. Exs. A, B & C), and Plaintiff properly served Fink with the Motion for Contempt (Second Byer Decl. Ex. E), the Court finds that Plaintiff properly served Fink on behalf of XP Photo and Hsu in compliance with Local Rule 5-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 13-01607 SJO (SPx)　　　　　DATE: September 24, 2013

the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *In re Dual-Deck Video Cassette Recorder*, 10 F.3d 693, 695 (9th Cir. 1993). This burden is "a higher standard than the preponderance of the evidence standard but less stringent than beyond a reasonable doubt." *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466 (9th Cir. 1989). "The burden then shifts to [Contempt Respondents] to demonstrate why they were unable to comply." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999) (citing *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)). Contempt Respondents "must show they took every reasonable step to comply." *Stone*, 968 F.2d at 856.

The Court addresses each individual Contempt Respondent in turn.

　　A.　Millionway

Millionway does not dispute that it and its agents continue to sell and offer to sell Carry Speed Camera Sling products. A partial list of the products available sale online after June 12, 2013, includes:

| Product | Dates |
| --- | --- |
| CS-Pro MKII Sling Strap | June 20 |
| FS-Pro Camera Sling Strap | June 14, June 20, June 21, June 24, August 8, August 14 |
| FS-SLIM Camera Sling Strap | June 14, June 20, June 24, August 8, August 14 |
| CS-1 MK II Camera Sling Strap | June 21 |
| CS-3 Camera Sling Strap | June 21 |
| "Extreme" Sport Straps (in Red and Black) | August 8, August 14 |
| FS-2 Sling Straps (in Camo, Black, Fusion, and Tuxedo versions) | August 8, August 14 |
| Components, including mounting plates and ball head connectors | June 14, June 18, June 20, June 21, June 24, August 14 |

The Injunction bars Millionway from "directly infringing or inducing infringements of Plaintiff's ['729 Patent]." (Default J. Order 9.) The Court found that the Carry Sling line of products infringed Plaintiff's '729 Patent. (Default J. Order 1-2.) The Court justified this finding based in part on

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 13-01607 SJO (SPx)</u>  DATE: <u>September 24, 2013</u>

Plaintiff's Claim Chart that compared features of the FS and CS strap models to the '729 Patent. (Default J. Order 5.)

There is no doubt that Millionway continuously and intentionally advertised and sold FS and CSbranded Camera Sling Straps, as well as other Carry Speed Camera Sling Straps, in defiance of this Court's Injunction. Millionway used multiple vendors, switching between them as necessary. Furthermore, Millionway launched a new sales website after receiving notice of the Injunction. Millionway responded to Plaintiff's attempts to enforce the Injunction by renaming and reposting sales webpages to keep the Camera Sling products on the market, issuing counter-notices denying its products infringed the '729 Patent, and filing lawsuits in different judicial districts. Millionway appears to have made no efforts at all to comply with the Injunction, and instead made every effort to evade it.

Rather than disputing its responsibility for the sale of the products, Millionway argues that the Injunction does not apply to its products because "the issue of claim construction and claim infringement remains unresolved by the Court." (Opp'n 2.) Millionway raises two specific arguments in support of this allegations. First, Millionway claims that Plaintiff's infringement analysis in the Motion for Default Judgment is invalid, so no product of Millionway's infringes the Patent. (Mot. 7.) Second, Millionway argues that even if Plaintiff's infringement analysis in the Claim Chart is valid, "Black Rapid made no attempt to show a common relationship between [other Carry Speed] products other than the same trademark was being used." (Mot. 7.)

Both of these arguments are entirely misplaced at this stage in the proceedings, because the Court has already ruled on both of these issues. For the first issue, the Court issued a judgment finding that "Plaintiff has sufficiently demonstrated that Defendants directly infringed the '729 Patent." (Default J. Order 5.) If Millionway disputed its infringement of the '729 Patent, it should have responded to Plaintiff's complaint, opposed Plaintiff's request for entry of default, opposed Plaintiff's request for a permanent injunction, applied to the Court for relief from the entry of default, or appealed the Injunction. Millionway makes no attempt to explain or excuse its failure to do any of this here.

By failing to contest Plaintiff's actions in this case, Millionway has waived any defenses it may have had as to the invalidity or noninfringement of the '729 Patent. Under Federal Rule of Civil Procedure 13, compulsory counterclaims arise from the same transaction or occurrence as the underlying claim. Fed. R. Civ. P. 13. Courts typically treat counterclaims as compulsory when they involve the infringement or noninfringement of the same patent as from the main claim. *Ruckus Wireless, Inc. v. Harris Corp.*, 11-CV-01944-LHK, 2012 WL 588792 (N.D. Cal. Feb. 22, 2012) ("[O]ther district courts routinely hold that declaratory judgment claims for invalidity, unenforceability, and noninfringement are compulsory counterclaims to claims of infringement of the same patent."); *see also Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003) (ruling that counterclaims for patent infringement are compulsory in response to a declaration of noninfringement). A party waives its right to bring a compulsory

counterclaim in future litigation if it does not bring it in the original proceeding. *Polymer*, 347 F.3d at 938. Thus, in failing to answer or bring any counterclaims in response to Plaintiff's Complaint, Millionway has waived any argument that it did not infringe the '729 Patent.[4]

Similar reasoning bars Millionway's argument that Plaintiff has not shown that all Carry Speed products infringe the '729 Patent, but only those analyzed in Plaintiff's Claim Chart. When the Court entered default after Millionway failed to respond to Plaintiff's Complaint, the Court took all of Plaintiff's allegations in the Complaint as true, including the allegation that Millionway infringed the '729 Product by manufacturing, importing, selling, and/or offering to sell "Carry Speed" camera straps, including but not limited to its Camera Sling products. (Default J. Order 1-2.) Moreover, in its Order for Default Judgment, the Court explicitly stated that Millionway's Camera Sling products "infringed at least one claim of the '729 Patent" and defined these products with the phrase "Infringing Products." (default J. Order 1-2.) Therefore, by continuing to sell Carry Speed Camera Sling products, Millionway has violated the Court's Injunction. The Court did not limit the Injunction to those products explicitly analyzed in Plaintiff's Claim Sheet. Had Millionway wished to dispute Plaintiff's allegation that all Carry Speed Camera Sling products infringed the '729 Patent, it should have done so earlier in these proceedings. By failing to do so, Millionway has waived its arguments of noninfringement.

For these reasons, Millionway's arguments against applying the Injunction to its activities do not provide a good faith and reasonable reason for violating it. The Court thus finds that Plaintiff has demonstrated by clear and convincing evidence that Millionway has violated the terms of the Injunction beyond substantial compliance and that Millionway has not attempted to comply with the Injunction in good faith based on a reasonable interpretation thereof.

    B.    <u>XP Photo</u>

Before the Court can consider the merits of Plaintiff's allegations against XP Photo, the Court must determine if it has personal jurisdiction over the company. XP Photo is a Texas corporation. (Byer Decl. Ex. 44 ¶ 1.) The Ninth Circuit has considered and rejected the argument that a federal court

---

[4] While it is not necessary to consider Millionway's arguments about the validity of Plaintiff's claim construction, the Court notes that Millionway's argument seems to hinge on the allegation that in the '729 Patent, "it is obvious . . . that the first coupler portion and the second coupler portion are part of the same component," while the claim chart construed the two portions as two different components. (Opp'n 4-5.) Millionway argues that the claim construction is therefore "completely different" from the true embodiment of the '729 Patent. (Opp'n 5.) However, this entirely ignores Plaintiff's second coupler embodiment, as shown in Figures 10, 13, and 21 of the '729 Patent. (Decl. of David Fink in Supp. of Opp'n ("Fink Decl.") Ex. B at 6, 9, and 17, ECF No. 38-3.) In these figures, the coupler consists of two separate components.

necessarily has personal jurisdiction over international violators of an injunction. *Reebok Intern. Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995). However, in so doing, the panel recognized that, because the "mandate of an injunction issued by a federal district court runs nationwide," it may be "sound, even necessary" to allow the court to reach out and enforce the injunction nationwide. *Id; see also Waffenschmidt v. MacKay*, 763 F.2d 711, 714 (5th Cir. 1985). This Court agrees that an injunction's reach must not stop at the state border. For an injunction to have power, the Court must be able to enforce it against even out-of-state violators.

Injunctions bind not only parties to the lawsuit, but also non-parties who are in "active concert" with parties and receive notice of the injunction. Fed. R. Civ. P. 65(d)(2). Thus, non-parties "who act in concert with an enjoined party may be held in contempt, but only for assisting the enjoined party in violating the injunction." *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1395 (Fed. Cir. 1996). To hold non-parties liable for contempt, they must "act with an enjoined party to bring about a result forbidden by the injunction" and be "aware of the injunction and know that their acts violate the injunction." *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1353 (Fed. Cir. 1998).

Here, Plaintiff has shown that XP Photo had notice of the Injunction. (Byer Decl. Ex. 5.) Nonetheless, today XP Photo continues to sell Carry Speed products from its website, including many FS and CS Series Camera Sling Straps. (Byer Decl. Exs. 23-31.) Moreover, Millionway lists XP Photo as its exclusive U.S. distributor for Carry Speed camera straps. (Byer Decl. Ex. 22.) The two parties are acting in concert and working together to sell Millionway's Infringing Products in U.S. markets. Neither Millionway nor XP Photo has disputed any of these allegations. Plaintiff has demonstrated by clear and convincing evidence that XP Photo has violated the terms of the Injunction beyond substantial compliance without good faith and reasonable reasons for doing so. Thus, the Court holds XP Photo in contempt for acting in concert with Millionway to violate the Injunction.

    C.    <u>Hsu</u>

For the foregoing reasons, the Court finds its personal jurisdiction extends over Hsu, a resident of Texas. (*See* Byer Decl. Ex. 34.)

An injunction binds both the parties to the injunction and also the parties' officers, agents, servants, employees, and attorneys who had notice of the injunction. Fed. R. Civ. Pro. 65(d)(2)(B). For example, "[a]n order to a corporation binds those who are legally responsible for the conduct of its affairs." *United States v. Laurins*, 857 F.2d 529, 535 (9th Cir. 1988). Thus, the Court may hold Millionway's employees, including Hsu, in contempt for their role in violating this Court's Injunction.

In its Opposition, Millionway does not dispute Hsu's role in its organization. To the contrary, in its Complaint to the Federal District Court in the Southern District of Texas, Millionway embraces

| CASE NO.: CV 13-01607 SJO (SPx) | DATE: September 24, 2013 |
|---|---|

Hsu's role, calling him a "key employee of Millionway." (Byer Decl. Ex. 35 ¶ 21.) Hsu attended a number of tradeshows as Millionway's representative. (Whipple Decl. ¶ 5.) Hsu's email chain with Black Rapid employees also shows the extent of his control and ownership over Millionway. Hsu speaks of a plan he is developing to "to work with BlackRapid for a long run, not just limited to sling strap [sic]." (Whipple Decl. Ex. 1 at 7.) He states that he will "try to create an opportunity to turn our competition into a partnership." (Whipple Decl. Ex. 1 at 5.) The clear impression left by these emails is that at the time the emails were sent, Hsu was integral to Millionway's technological and strategic decision-making. Furthermore, Hsu had notice of the Injunction. (Byer Decl. Ex. 34.)

However, Plaintiff has the burden of showing that Hsu violated the Injunction with "clear and convincing evidence." *In re Dual-Deck*, 10 F.3d at 695. Plaintiff has provided little evidence connecting Hsu to Millionway's activities after the Court issued the Injunction. For example, the settlement emails are dated from March 2013 and Hsu's most recent documented tradeshow appearance was June 1, 2013. Furthermore, there are serious evidentiary issues with some of Plaintiff's evidence about Hsu's involvement with Millionway and Carry Speed products. (*See, e.g.*, Exs. 41 & 42.) Overall, the burden is on Plaintiff to prove that Hsu remained a Millionway employee and that he "willfully directed and controlled Millionway's violation of the Injunction." (Mot. 18.) While the Court agrees that it is more likely than not that Hsu has remained involved with Millionway's operation and that he has directed and controlled Millionway's violation of the Injunction, Plaintiff has not provided clear and convincing evidence of this involvement. The Court therefore declines to hold Hsu in contempt at this time.

   D.   Remedies

Sanctions in a civil contempt proceeding may be imposed either to "coerce the defendant into compliance with the court's order, [or to] . . . compensate the complainant for losses sustained." *Mine Workers*, 330 U.S. at 303-04. Compensatory sanctions to an opposing party "[are] limited to that party's actual loss." *Crystal Palace*, 817 F.2d at 1366; *see also Gen. Signal*, 787 F.2d at 1380. "Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994). In determining the amount of a coercive fine, "a court should consider the 'character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction.'" *Gen. Signal*, 787 F.2d at 1380 (citing *Mine Workers*, 330 U.S. at 304).

By contrast, criminal contempt sanctions are punitive in nature, and they "may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *Hicks v. Felock*, 485 U.S. 624, 632 (1988). Sanctions "imposed retroactively for a completed act of disobedience, such that the contemnor cannot avoid or abbreviate the [sanctions] through later compliance" are criminal. *Int'l Union*, 512 U.S. at 828-29 (internal citation and quotation marks omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  **CV 13-01607 SJO (SPx)**          DATE:  **September 24, 2013**

Here, Plaintiff seeks (1) an order requiring Contempt Respondents to appear before the Court with all infringing camera straps so that these materials may be destroyed, along with purchase orders, sales invoices, accounting records, and shipping receipts for the past twelve months; (2) a sanction of $500 per day from each Contempt Respondent for the period spanning from the date these Contempt Respondents had notice of the Injunction until they demonstrate compliance with the Injunction; (3) reasonable attorneys' fees and costs associated with enforcing the injunction; and (4) an order from the Court authorizing the seizure, impoundment, and delivery of all unauthorized or infringing products that Contempt Respondents may import into the United States. (Mot. 19-20.)

While the Court agrees that Millionway and XP Photo's conduct has clearly violated the Injunction, Plaintiffs' requested sanctions are punitive in nature, as they do not compensate Plaintiffs for actual losses nor do they provide Millionway and XP Photo the opportunity to cure. Ninety-six days have passed between June 12, 2013, and the Motion's hearing date, so Plaintiff's requested sanction would sum to nearly $50,000 each from Millionway and XP Photo. This amount is inappropriate in this context, where Plaintiff is seeking a finding of civil contempt and has not provided any evidence of actual losses it has incurred as a result of Millionway and XP Photo's infringing activity. *See Gen. Signal*, 787 F.2d at 1380 (reversing district court's sanction of $400,000 when there was no evidence that the complainant had incurred such damages).

Nevertheless, the Court finds that some compensatory sanctions are appropriate. Plaintiff has requested recoupment for reasonable attorneys' fees and costs in enforcing the Injunction. "[A]ttorneys' fees are an appropriate component of a civil contempt award." *In re Dyer*, 322 F.3d 1178, 1195 (9th Cir. 2003). The Court thus awards to Plaintiff those costs and fees that flow from Millionway and XP Photo's violation of the Injunction.

Moreover, given Millionway and XP Photo's widespread and continued infringement in violation of this Court's Amended Consent Decree, the Court finds that coercive sanctions are also appropriate. If Millionway and XP Photo are not in full compliance with this Court's Amended Consent Decree **within ten days of the issuance of this Order**, they shall each pay to Black Rapid the sum of $500 per day for the period spanning from the date they had notice of the Injunction until they demonstrate compliance with the Injunction.

The Court declines to order the seizure of any Infringing Products at this time.

III.     RULING

For the foregoing reasons, Plaintiffs' Motion is **GRANTED**. The Court **ORDERS** as follows:

　　1.　　Millionway and XP Photo shall pay to Plaintiff reasonable attorneys' fees and costs in enforcing the Injunction. Plaintiff shall file a fee request within ten days from the date of this order.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  <u>CV 13-01607 SJO (SPx)</u>          DATE:  <u>September 24, 2013</u>

2. If Millionway and XP Photo are not in full compliance with the Injunction **within ten days of the issuance of this Order**, Millionway and XP Photo shall each pay to Black Rapid the sum of $500 per day for the period spanning from the date they had notice of the Injunction until they demonstrate compliance with the Injunction.

IT IS SO ORDERED.